UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
**EDWARD PERSON**,                                           :
                                                             :
                            Plaintiff,                       :
                                                             :   **MEMORANDUM DECISION**
                                                             :   **AND ORDER**
            – against –                                      :
                                                             :   22-CV-02980 (AMD) (LB)
                                                             :
                                                             :
**MULLIGAN SECURITY CORP., BOB**                             :
**CONGLETON, TOM COLLINS**,                                  :
                                                             :
                            Defendants.                      :
                                                             :
                                                             :
------------------------------------------------------------ X

**ANN M. DONNELLY**, **United States** District Judge:

The plaintiff filed this *pro se* action on May 19, 2022, alleging violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12112, *et seq*., and relevant state law by his former employer, Mulligan Security LLC,[1] and individual defendants Bob Congleton and Tom Collins. (ECF No. 1 at 1-3.) On July 14, 2022, the defendants moved to dismiss the plaintiff's complaint. For the reasons that follow, I grant the motion to dismiss.

## BACKGROUND

The plaintiff alleges he suffers from a "bad back," "neck," and "testi[cular] cancer removed." (*See id*. at 13, 21). His cancer is in remission and he has "limited mobility" because of a "bus crash, car crash." (ECF No. 14 at 12.) Sometime in May 2019, the plaintiff began working for Mulligan Security as a "fire guard" at a Manhattan property, earning $17.20 per hour. (ECF No. 4 at 2; ECF No. 8-3 at 2.) The plaintiff had to stand outside the building's west doors and monitor construction workers. (ECF No. 1 at 19; ECF No. 4 at 2.) Although the

---

[1] The Clerk of Court is directed to amend the caption to reflect the correct entity being sued.

1

plaintiff was supposed to stand outside, he once saw a female fire guard sitting at her post. (*Id*.) Sometime after he started working, the plaintiff "squatted on the floor" and told Bob Congleton, Director at Mulligan Security, that he "had been in a car, bus accident" and that he had "testicular cancer . . . removed." (ECF No. 4 at 4.)

The plaintiff claims that these conditions are disabilities which the defendants did not accommodate. In the summer of 2019, Collins denied the plaintiff's request that he be permitted to sit down because his back hurt. (*Id*. at 2.) Another time, the plaintiff was standing with his back to the door, apparently blocking the exit. (*Id*. at 5.) Congleton "plucked" the plaintiff's hard hat "to get [him] to move out of the way." (*Id*.)

On October 13, 2019, Collins was in the lobby waiting for the plaintiff who was "doing fire watch" on the 29th and 35th floors. (*Id*. at 3.) The plaintiff was delayed while he waited for a freight elevator to take him to the lobby. (*Id*.) When he got to the lobby, Collins "aggressive[ly] raise[d] his voice" and asked "why [the plaintiff] was upstairs for so long." (*Id*. at 3.) When the plaintiff explained that he was waiting for the elevator, Collins yelled again, and asked, "why didn't [you] use the other elevator[?]" (*Id*.) Collins reminded the plaintiff he was a security guard and said that it was "time [he] acted like one." (*Id*. at 4.)

On March 2, 2020, the plaintiff was on his cell phone when Congleton yelled at the plaintiff in front of other employees, and told him "to go home," "get off the property," and return his equipment and radio. (ECF No. 4 at 6.) The plaintiff decided not to return to work because he was embarrassed and felt Congleton was an "abusive boss." (*Id*.) He did not show up for any future scheduled shifts and had no further contact with the defendants. (ECF No. 8-3 at 3.)

2

The plaintiff also alleges that he "was constantly coughing" during his employment, and no one at Mulligan "inform[ed] [him] there was a deadly virus [] and a pandemic going on . . . ." The plaintiff further alleges that he was denied a raise and denied one week's pay that he was owed for waiving medical insurance, which was Mulligan's policy. (ECF No. 1 at 22.)

Prior to bringing this lawsuit, the plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") on February 4, 2021. (ECF No. 1 at 12; ECF No. 8-3.) On October 22, 2021, the NYSDHR determined that the record did not support a finding of probable cause for allegations of disability discrimination and retaliation in violation of N.Y. Exec. Law, art. 15 due to a "lack of evidence." (ECF No. 8-3.)

On March 11, 2022, the United States Equal Employment Opportunity Commission ("EEOC") adopted the state's findings and chose not to proceed with an investigation. (*Id.* at 4.) The plaintiff timely filed this action. Liberally construed, the plaintiff alleges three kinds of discriminatory conduct in violation of the Americans with Disability Act ("ADA"): (1) disability discrimination, (2) retaliation, and (3) hostile work environment. (ECF No. 1 at 4.) The plaintiff also alleges that Mulligan was negligent under state common law. (ECF No. 4 at 7.) The plaintiff seeks compensatory and punitive damages as well as attorney's fees. (*Id*. at 6.)

## STANDARD OF REVIEW

In order to survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels

3

and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Pleadings are to be construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F. 3d 150, 160 (2d Cir. 2010).

A *pro se* complaint is held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). "This is especially true when dealing with *pro se* complaints alleging civil rights violations." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)).

At the motion to dismiss stage, the court "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (quoting *Taylor v. Vt. Dep't of Educ.,* 313 F.3d 768, 776 (2d Cir. 2002)). The court may also consider any "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in [the] plaintiff['s] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," as long as the plaintiff relied on the "terms and effect of a document in drafting the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

The Court takes judicial notice of the New York State Division of Human Rights determination, which was attached to the plaintiff's complaint and the defendants' motion to dismiss. *See Volpe v. Nassau Cty.*, 915 F. Supp. 2d 284, 291 (E.D.N.Y. 2013) ("The Court notes

4

that in adjudicating this motion, it may take judicial notice of documents in the public record, which includes records and reports of administrative bodies, *i.e.*, the NYSDHR.").

## DISCUSSION

### I. The Plaintiff's Claims Against the Individual Defendants

In this Circuit, it is well-settled that "individuals may not be held liable under [] the ADA." *Scelsi v. Habberstad Motorsport, Inc.*, No. 19-CV-4315, 2022 WL 580960, at *3 (E.D.N.Y. Feb. 24, 2022); *see also Castro v. City of New York*, 24 F. Supp. 3d 250, 259 (E.D.N.Y. 2014) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir.2010) (per curiam)). There is no allegation that either of the individual defendants are government employees acting in their individual capacities, and even if they were, the plaintiff does not seek prospective injunctive relief, such as reinstatement to his position as a fire guard. *See Harris v. Mills*, 572 F.3d 66, 72-73 (2d Cir. 2009) (holding that a claim for prospective injunctive relief brought pursuant to Title II of the ADA and the Rehabilitation Act may be maintained against an individual acting in her official capacity). Accordingly, the plaintiff's ADA employment discrimination claims against Congleton and Collins must be dismissed.

### II. Disability Discrimination

The plaintiff claims that Mulligan denied him accommodation for a disability in violation of the ADA. He also alleges that Mulligan treated him differently than a similarly situated person. To prevail on a claim of disability discrimination under any available theory, the plaintiff must allege that he is disabled pursuant to the ADA. As a threshold matter, the defendants argue that the plaintiff has not done so here. (ECF No. 8 at 8-10.) "To determine if a person is disabled pursuant to the ADA, courts in the Second Circuit evaluate (1) whether the plaintiff suffered from a physical or mental impairment, (2) whether the life activity upon which

5

the plaintiff relied . . . constitutes a major life activity under the ADA, and (3) whether the plaintiff's impairment substantially limited [the] major life activity identified." *Bradshaw v. City of New York*, No. 18-CV-8944, 2019 WL 3711765, at *5 (S.D.N.Y. July 12, 2019)

The EEOC has issued regulations implementing the ADA that define an "impairment" to include any "physiological disorder, or condition" that affects the neurological, musculoskeletal, and cardiovascular systems. 29 C.F.R. § 1630.2(h)(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." § 12102(2)(A). Determining whether an impairment "substantially limits" a major life activity involves evaluating the plaintiff's ability relative to most people in the general population. *Risco v. McHugh*, 868 F. Supp. 2d 75, 108 n.47 (S.D.N.Y. 2012) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). "The term substantially limits shall be construed broadly in favor of expansive coverage, . . . and is not meant to be a demanding standard." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 68 n.3 (2d Cir. 2014) (internal quotations omitted). "Factors to consider in determining whether a major life activity is substantially limited include: the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long-term impact." *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005); *see also* 29 C.F.R. § 1630.2(j).

The plaintiff identifies the following disabilities: "bad back," "neck," and "testi[cular] cancer removed." (ECF No. 1 at 13, 21.) In his briefing, the plaintiff suggests that he has "chronic pain emotional distress from working standing long periods of time without relief from stress, discomfort, anxiety;" he also explains, "I still suffer and always will for the rest of my life." (ECF No. 14 at 12.) He alleges that because of these conditions, he could not stand for

6

long hours in the summer heat.  (ECF No. 1 at 19.)  The plaintiff has not identified any specific condition affecting his musculoskeletal system.  Although he refers to a "car/bus accident" and his "removed" testicular cancer, he does not explain how this relates to his back pain or limits his mobility.  These vague allegations do not establish that the plaintiff suffers from a physical impairment.

Even if this vague allegation could be said to constitute an impairment, the plaintiff provides only a conclusory assertion that the impairment substantially limits his ability to stand.  The plaintiff alleges that on one hot day, he asked Collins if he could sit down because his back hurt, and that Collins denied the request.  He does not plead any other instances in which his back pain limited his ability to stand, or specific allegations about the nature, severity, or duration of his back pain.  *Jaafari v. Bank of Tokyo-Mitsubishi UFJ*, Ltd., No. 10-CV-4060, 2011 WL 13128204, at *6 (S.D.N.Y. Sept. 2, 2011), *aff'd*, 509 F. App'x 68 (2d Cir. 2013) ("A generalized complaint of back pain, without any evidence to show its nature or severity, its duration, or the existence of any permanent or long-term impact, is insufficient to demonstrate a substantial limitation.").  Nor has the plaintiff shown that he is more limited than the average person in his ability to stand long hours in the heat so as to be "substantially limited" in a major life activity.  *Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 643 (2d Cir. 1998) ("Colwell's descriptions of his limitations are marked throughout by hedging and a studied vagueness, so that there is no support for the idea that his impairments would be significantly limiting to 'the average person in the general population,' *see* 29 C.F.R. § 1630.2(j)(1), as opposed to someone expected to perform the prolonged, repetitive, and rigorous demands of a police officer.")

Because the plaintiff does not demonstrate he is a person with a disability under the ADA, his discrimination claim is dismissed.

### III. Retaliation

The plain language of the ADA's retaliation provision states that "[n]o person shall discriminate against any individual because such individual . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "To state a claim for ADA retaliation, 'a plaintiff must allege that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against [him]; and (4) a causal connection exists between the alleged adverse action and the protected activity.'" *Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651, 2020 WL 3403191, at *11 (E.D.N.Y. June 19, 2020) (quoting *Caskey v. County of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (summary order)) (alterations omitted). The plaintiff does not allege that he complained about how he was treated, or participated in any way in an investigation, proceeding, or hearing related to his or another person's disability discrimination claims. He also has not alleged an adverse action. The NYSDHR determined that he stopped reporting for his scheduled shifts and "after an extended absence with no notifications [he] was deemed to have abandoned his position." (ECF No. 8-3 at 3.) The plaintiff himself admits that he walked off the job in March of 2020 because he was embarrassed in front of his colleagues. Accordingly, the plaintiff's retaliation claim is dismissed.

### IV. Hostile Work Environment

Hostile work environment claims are cognizable under the ADA. *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 73-74 (2d Cir. 2019). "A plaintiff alleging a hostile work environment claim under the ADA [] 'must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment.'" *Id.* at 74 (citations omitted). As

8

with hostile work environment claims under Title VII, the harassment must be based on the protected characteristic, which under the ADA is the plaintiff's disability. *Id*. ("By borrowing Title VII's language, Congress suggested that it intended for the ADA to be coextensive, at least in this respect, with Title VII. This view is bolstered by the shared purpose of Title VII and the ADA to prevent discrimination against a defined class of people.")

As an initial matter, this claim fails because, as discussed above, the plaintiff is not a member of a protected class as defined by the ADA. But even had the plaintiff established that he had a qualifying disability, the complaint still falls short of plausibly describing a hostile workplace. The plaintiff alleges three instances over the course of his nine-month employment. The nature and frequency of these interactions do not rise to the level of a hostile workplace. *Harvin v. Manhattan and Bronx Surface Transit Operating Auth*., 767 F. App'x 123, 128 (2d Cir. 2019) (summary decision) (alleging supervisors were "rude and hostile on various occasions . . . reflect only fraught relationships with [the plaintiff's] supervisors" and not a hostile work environment). Although the plaintiff believes that his supervisors treated him cruelly, he describes only isolated incidents that do not rise to the level of Title VII violations. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788(1998) ("These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'"). Moreover, the plaintiff does not allege that that any of the conduct was causally related to a disability.

## V.     State Law Claims

Because I dismiss all of the plaintiff's federal claims, I decline to exercise supplemental jurisdiction over the plaintiff's state law claims, which are dismissed without prejudice. *Langella v. Mahopac Cent. Sch. Dist*., No. 18-CV-10023, 2023 WL 2529780, at *6 (S.D.N.Y.

9

Mar. 15, 2023) ("A federal district court may decline to exercise supplemental jurisdiction over state-law claims when it 'has dismissed all claims over which it has original jurisdiction.'") (*quoting* 28 U.S.C. § 1367(c)(3))); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

## CONCLUSION

For the reasons stated above, I grant the defendants' motion to dismiss the complaint in its entirety. However, given the plaintiff's *pro se* status, the Court grants the plaintiff leave to file an amended complaint within 30 days of the date of this order. If the plaintiff does not file an amended complaint within 30 days, the complaint will be dismissed and judgment will enter.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
         March 27, 2023