UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
          :
**EDWARD PERSON**,
          :
          Plaintiff,
          :  **MEMORANDUM DECISION AND ORDER**

    – against –
          :  22-CV-2980 (AMD) (LB)

**MULLIGAN SECURITY CORP.**, **BOB CONGLETON**, and **TOM COLLINS**,
          :

          Defendants.
          :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

On March 27, 2023, the Court dismissed with leave to amend the *pro se* plaintiff's complaint alleging violations of the Americans with Disabilities Act ("ADA")[1] by his former employer, Mulligan Security LLC, and individual defendants Bob Congleton and Tom Collins. (ECF No. 1 at 1–3.) The plaintiff filed an amended complaint on May 25, 2023 (ECF No. 20), which the defendants move to dismiss. For the following reasons, the defendants' motion is granted.

## BACKGROUND[2]

The plaintiff worked as a security guard on construction sites. He filed a complaint on May 19, 2022 alleging that he is disabled because he suffers from back and neck problems, and because he has testicular cancer.[3] (ECF No. 1.) He says that the defendants ignored his accommodation requests and discriminated against him based on his disability in violation of the

---

[1] 42 U.S.C. §§ 12112, *et seq.*

[2] The Court's March 27, 2023 Order includes the factual history of this case, familiarity with which is assumed.

[3] The plaintiff alleges that his cancer is in remission. (ECF No. 26 at 17.)

ADA.[4]  In the summer of 2019, Collins denied the plaintiff's request that he be permitted to sit down during his shift because his back was "tight and stiff," and he needed to rest.  (ECF No. 26 at 3.)[5]  Another time, Congleton "pluck[ed]" the plaintiff on his head to "get [him] to move from in front of [the] door."  (*Id.* at 6.)  The individual defendants also yelled at him.  For example, on October 13, 2019, Collins was in the lobby waiting for the plaintiff who was "doing fire watch" on the 29th and 35th floors.  The plaintiff was delayed because he had to wait for a freight elevator to take him to the lobby.  When he got to the lobby, Collins "aggressive[ly] raise[d] his voice" and asked "why [the plaintiff] was upstairs for so long."  When the plaintiff explained that he was waiting for the elevator, Collins yelled again, and asked, "Why didn't [you] use the other elevator[?]"  Collins reminded the plaintiff he was a security guard and that it was "time [he] acted like one."  (*Id.* at 9–10.)

On March 2, 2020, the plaintiff was on his cell phone when Congleton yelled at him in front of other employees, and told him to "go home," "get off the property," and return his equipment and radio.  (ECF No. 4 at 6.)  The plaintiff decided not to return to work because he was embarrassed and felt Congleton was an "abusive boss."  (*Id.*)  He did not show up for any future scheduled shifts and had no further contact with the defendants.  (ECF No. 8-3 at 3.)

---

[4] Unlike the initial complaint, the amended complaint does not raise state law claims.

[5] Given the plaintiff's *pro se* status, the Court considers the facts alleged in the complaint as well as those in the plaintiff's opposition papers.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."); *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) ("Because [the plaintiff] is proceeding pro se, the Court may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint.").

The factual allegations in the amended complaint are substantially the same as those in the initial complaint.[6] (*Compare* ECF No. 1 at 5, 15–23 *with* ECF No. 20 at 5, 8–9). However, the plaintiff has provided the Court with new records, including a letter from Dr. Lucas Dreamer of New York City Health and Hospitals, King County explaining that the plaintiff was involved in two car accidents, in 1986 and 2001, respectively, and outlining the plaintiff's medical history. The letter and other new exhibits establish that the plaintiff has Grave's disease and meralgia paresthetica, which causes him enough pain to "limit his ability to walk at times," as well as lumbar disc herniations and "limiting low back pain." (ECF No. 26 at 17.)[7] Dr. Dreamer stated that the plaintiff "has a significant burden of illness and injury," "has struggled with physical limitations for many years," and "has struggled to independently care for himself at times." (*Id.*)

The plaintiff also claims that the defendants denied him a raise that other employees received. Specifically, he says that he was hired as a fire guard in June 2019 and was paid $17.70 per hour. In August 2019, the plaintiff was promoted to a lobby guard position; he claims that his new salary should have been $18.50 per hour, a difference of eighty cents. (*Id.* at 5.) Although other lobby guards received the raise, the plaintiff did not; he claims that he was treated "unfairly and different[ly]." (*Id.*) The plaintiff raised his concern in a text message to Congleton, who responded: "Mulligan has 1400 employees and they put [the raise] in as fast as they can." (*Id.* at 13.)

---

[6] The plaintiff is also pursuing substantially similar claims in state court: on May 18, 2023, he filed a complaint against the same defendants in New York Supreme Court, New York County. See Index No. 10067/2022. On October 10, 2023, Justice Dakota D. Ramseur dismissed the action because the plaintiff served the complaint on the defendants almost six months too late; Justice Ramseur further held that, even if the complaint were not procedurally deficient, the plaintiff's claims are meritless. The plaintiff has appealed that decision.

[7] The medical records are attached as exhibits to the plaintiff's opposition to the defendant's motion to dismiss. These records are "integral" to the amended complaint. *See Chambers v. Time Warner*, 282 F.3d 147, 152–54 (2d Cir. 2002); *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1992); *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003).

The defendants moved to dismiss the complaint on June 8, 2023; they argue that the plaintiff has not cured the deficiencies the Court identified in its March 2023 Order. Specifically, they argue that: (i) the plaintiff did not provide notice to the defendants of his disability, (ii) the plaintiff is not disabled under the ADA, and (iii) the plaintiff's discrimination, retaliation, and hostile work environment claims should otherwise be dismissed under Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 21-1.)

## LEGAL STANDARD

**I.     Motion to Dismiss**

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Pleadings are to be construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F. 3d 150, 160 (2d Cir. 2010).

A *pro se* complaint is held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). "This is especially true when dealing with *pro se* complaints alleging civil rights violations." *Weixel v.*

4

*Bd. of Educ. of City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)).

## II.  ADA

To plead a *prima facie* case of disability discrimination or retaliation, a plaintiff must show the following: (1) the employer is subject to the ADA; (2) the plaintiff was a person with a disability within the meaning of the ADA; (3) the plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of her disability.  *See McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013); *see also Clark v. Coca-Cola Beverages N.E., Inc.*, No. 20-CV-4040, 2022 WL 92060, at *2 (2d Cir. Jan. 10, 2022).

At the pleading stage, a plaintiff does not need to allege specific facts establishing each element of a *prima facie* case of discrimination.  *Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 86–87 (2d Cir. 2015).  But a complaint must have facts that "plausibly suppor[t]" the plaintiff's claim.  *Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016); *see also Littlejohn v. City of New York*, 795 F.3d 310 (2d Cir. 2015).

To prevail on a claim of disability discrimination under any available theory, the plaintiff must first allege that he is disabled.  "To determine if a person is disabled pursuant to the ADA, courts in the Second Circuit evaluate (1) whether the plaintiff suffered from a physical or mental impairment, (2) whether the life activity upon which the plaintiff relied . . . constitutes a major life activity under the ADA, and (3) whether the plaintiff's impairment substantially limited [the] major life activity identified."  *Bradshaw v. City of New York*, No. 18-CV-8944, 2019 WL 3711765, at *5 (S.D.N.Y. July 12, 2019)

The EEOC has issued regulations implementing the ADA that define an "impairment" to include any "physiological disorder, or condition" that affects the neurological, musculoskeletal, and cardiovascular systems. 29 C.F.R. § 1630.2(h)(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Whether an impairment "substantially limits" a major life activity depends on the plaintiff's ability relative to most people in the general population. *Risco v. McHugh*, 868 F. Supp. 2d 75, 108 n.47 (S.D.N.Y. 2012) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). "The term substantially limits shall be construed broadly in favor of expansive coverage, . . . and is not meant to be a demanding standard." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 68 n.3 (2d Cir. 2014) (internal quotations omitted). "Factors to consider in determining whether a major life activity is substantially limited include: the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long-term impact." *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005); *see also* 29 C.F.R. § 1630.2(j).

## DISCUSSION

### I. The Individual Defendants

In this Circuit, it is well-settled that "individuals may not be held liable under [] the ADA." *Scelsi v. Habberstad Motorsport, Inc.*, No. 19-CV-4315, 2022 WL 580960, at *3 (E.D.N.Y. Feb. 24, 2022); *see also Castro v. City of New York*, 24 F. Supp. 3d 250, 259 (E.D.N.Y. 2014) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir.2010) (per curiam)). The plaintiff does not allege that either of the individual defendants are government employees acting in their individual capacities; even if they were, the plaintiff does not seek prospective injunctive

relief, such as reinstatement to his position as a fire guard. *See Harris v. Mills*, 572 F.3d 66, 72-73 (2d Cir. 2009) (holding that a claim for prospective injunctive relief brought pursuant to Title II of the ADA and the Rehabilitation Act may be maintained against an individual acting in her official capacity). Accordingly, the plaintiff's ADA employment discrimination claims against Congleton and Collins must be dismissed.

## II. Whether the Plaintiff Is Disabled

"Discrimination claims under the ADA may be brought under a theory of adverse employment action or failure to provide reasonable accommodation." *Berger v. New York City Police Dep't*, 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018) (citing *McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013)); *Pardo v. Nielsen*, No. 19-CV-616, 2021 WL 1143897, at *7 (S.D.N.Y. Mar. 24, 2021). Under either theory, the Court must first determine whether the plaintiff is disabled. Whether a person is disabled under the ADA "requires an individualized and fact-specific examination." *Krikelis v. Vassar Coll.*, 581 F. Supp. 2d 476, 485 (S.D.N.Y. 2008).

The defendants argue that "there are no allegations regarding the nature or severity" of the plaintiff's pain, "or the existence of any permanent or long-term impact." (ECF No. 29 at 7.) However, the plaintiff filed medical records and letters from his doctors outlining his "extensive past medical history." (ECF No. 26 at 15–25.) In his letter, Dr. Dreamer explained that the plaintiff suffers from Grave's disease and meralgia paresthetica, which was painful enough to "limit his ability to walk at times;" the plaintiff also has lumbar disc herniations and "limiting low back pain." (*Id.*; *see also id.* at 18 (MRI results); *id.* at 19 (medical records of treatment for anxiety, neck pain, hypertension, Graves disease, and chronic low back pain with sciatica).) According to Dr. Dreamer, the plaintiff "has a significant burden of illness and injury," "has

7

struggled with physical limitations for many years," and "has struggled to independently care for himself at times." (*Id.* at 17.) The Court finds that these documented "impairments" constitute physiological disorders affecting the plaintiff's musculoskeletal condition.

Next, the defendants argue the plaintiff has not demonstrated "how his disability substantially limits any major life activity." (ECF No. 29 at 7.) The major life activities at issue here include "walking, standing, lifting, [and] bending." 42 U.S.C. § 12102(2)(A). Whether a physical impairment is "substantially limiting" should be "construed broadly in favor of expansive coverage." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 92 (2d Cir. 2021). The plaintiff alleges that his back and neck cause him enough pain and stiffness as to limit his ability to stand for an entire shift; he also says that "fracture[s] and dislocations" in his back and neck is a "physical limitation" he will have "for [his] long life." (ECF No. 26 at 7.)

The plaintiff's allegations are supported by Dr. Dreamer's observations that the plaintiff "has a significant burden of illness and injury," "has struggled with physical limitations for many years," and "has struggled to independently care for himself at times." (*Id.* at 17.) These "physical limitations" would inhibit major life activities such as "walking, standing, lifting, [and] bending." Caring for oneself is also considered a major life activity. 42 U.S.C. § 12102(2)(A).

The standard for making this determination "is not meant to be [ ] demanding." *Parada*, 753 F.3d at 68 n.3. The Court concludes that the plaintiff has met this standard and, accordingly, is disabled under the ADA.

### III. Discrimination Claims

A plaintiff claiming ADA discrimination must establish that he suffered an adverse employment action. *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 433, 438 (E.D.N.Y. 2015). An adverse employment action is a "materially adverse change in the

terms and conditions of employment." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004).

  a. **Disparate Treatment**

The amended complaint does not state a disparate treatment claim because the plaintiff does not allege a "materially adverse change" in his employment—for example, "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Vale*, 80 F. Supp. at 434.[8] He alleges that the defendants yelled at him in October 2019 and March 2020, and that Congleton "pluck[ed]" him on his head to get him to move away from a door where the plaintiff was standing; however, this conduct is not a materially adverse change in employment. *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008). ("Unprofessional and boorish" treatment does not amount to an adverse employment action). The defendants' actions, while perhaps unkind, are not "extraordinarily severe," nor do they constitute a "series of incidents [ ] sufficiently continuous and concerted to have altered the conditions of [his] working environment." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000); *Sakanovic v. Utica Nat'l*, No. 22-CV-359, 2023 WL 6122851, at *7 (N.D.N.Y. Sept. 19, 2023).

Even if the plaintiff had pleaded a materially adverse change, he must also offer evidence that "such action occurred under circumstances giving rise to an inference of discrimination." *Castro v. City of New York*, 24 F. Supp. 3d 250, 261 (E.D.N.Y. 2014). Examples of such conduct include an employer making "invidious comments about others in the employee's

---

[8] The plaintiff alleges that he did not return to work after May 2, 2020. (ECF No. 26 at 7.) The Court has considered whether the complaint can be construed to raise a constructive termination claim and finds that it does not, because the plaintiff has not demonstrated that that his "working conditions were so intolerable that a reasonable person would have felt compelled to resign." *Kelly v. N. Shore-Long Island Jewish Health Sys.*, 166 F. Supp. 3d 274, 288 (E.D.N.Y. 2016).

9

protected group" or exhibiting "more favorable treatment of employees not in the protected group." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2nd Cir. 2001) (citation omitted). The plaintiff's subjective belief that he was discriminated against based on his membership in a protected class, without more, is not sufficient to sustain a claim of discrimination. *See, e.g.*, *Moore v. Kingsbrook Jewish Medical Center*, No. 11-CV-3625, 2013 WL 3968748, at *6–7 (E.D.N.Y. July 30, 2013) (plaintiff's belief that he was discriminated against based on his national origin was insufficient to survive summary judgment). "Absent direct evidence demonstrating discriminatory intent, a plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of similarly situated employees but must show he was similarly situated in all material respects to the individuals with whom he seeks to compare himself." *Novick v. Vill. of Wappingers Falls, New York*, 376 F. Supp. 3d 318, 342–43 (S.D.N.Y. 2019) (internal quotation marks omitted and alterations adopted). "And to be similarly situated in 'all material respects,' [the plaintiff] must 'show that similarly situated employees who went undisciplined engaged in comparable conduct." *Id.* at 343 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)).

Here, the plaintiff does not allege discriminatory intent. Thus, the only colorable argument supporting a theory of disparate treatment is that that the defendants treated the plaintiff "unfairly and different['y]" when the other new lobby guards received a raise, but he did not. However, the plaintiff does not allege that he and the other lobby guards were "similarly situated in all material respects," nor does he allege whether the other guards had more or less seniority, or whether the defendants' decision to give raises was based on merit. Without more, the Court cannot make the required inference. The plaintiff's disparate treatment claim is therefore dismissed.

### b. Failure to Accommodate

To establish a *prima facie* case of reasonable accommodation case, a plaintiff must show that: "(1) [he] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [he] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 577 (S.D.N.Y. 2008).

The defendants argue that they were not on notice of his alleged disability because they did not have the plaintiff's medical records and the plaintiff did not otherwise inform them that he was disabled. They also say that the plaintiff "has not demonstrated how his purported accommodation to sit would have enabled him to perform the essential functions of his position as a guard." (ECF No. 29 at 9.)

While the plaintiff does not allege that he provided his medical records to his employers, he does allege that in August 2019 he told Congleton about his injuries. (ECF No. 20 at 2.) He says there is "camera proof of [him] bending explaining to [Congleton] about [his] back, neck, [and hip injuries], [and his] testicular cancer." (*Id.*) Although the plaintiff did not include this evidence in his submission, the Court, applying the lenient standard accorded to *pro se* litigants, concludes that the defendants had adequate notice of the plaintiff's alleged disability.

Nevertheless, the plaintiff does not explain how a chair would have helped him perform the "essential functions" of his job. He claims that he asked Collins if he could "sit and rest and [Collins] told [him that he] could not sit at [his] post." (ECF No. 26 at 3.) He did not tell the defendants how his disability affected his ability to do his job, or why he needed an accommodation. Nor does the amended complaint suggest that the plaintiff's disability was "obvious," so that the defendants should have known that he needed an accommodation. *Garcia*

11

*v. Kings Cnty. Hosp. Ctr.*, No. 16-CV-3151, 2018 WL 389212, at *5 (S.D.N.Y. Jan. 11, 2018). Without more, the plaintiff has not established a *prima facie* case for reasonable accommodation. *See, e.g.*, *Dooley v. Jet Blue Airways Corp.*, 636 F. App'x 16, 18–19 (2d Cir. 2015) ("[A]n employer cannot refuse to make an accommodation that it was never asked to make."); *Rosario v. City of New York*, No. 11-CV-9008, 2013 WL 782408, at *10 (S.D.N.Y. Jan. 9, 2013) (dismissing failure to accommodate claim where plaintiff "[had] not alleged that defendants were aware of the need for reasonable accommodation before his request"), *report and recommendation adopted*, 2013 WL 782581 (S.D.N.Y. Mar. 1, 2013); *Canales-Jacobs v. N.Y. State Office of Court Admin.*, 640 F. Supp. 2d 482, 499–500 (S.D.N.Y. 2009) (collecting cases).

Accordingly, the plaintiff's disability discrimination claims must be dismissed.

**IV.    Hostile Work Environment Claims**

Hostile work environment claims under the ADA are evaluated using the Title VII standard, *see Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014), which requires a plaintiff to "produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Sosa v. N.Y.C. Dep't of Educ.*, 819 F. App'x 30, 35 (2d Cir. 2020) (quoting *Rivera*, 743 F.3d at 20). "In conducting this analysis, [courts] consider[ ]: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." *Id.* (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009)).

The conduct alleged—that Collins yelled at the plaintiff, and that Congleton "pluck[ed]" the plaintiff to move him out of Congleton's way—is not the kind of "pervasive" or "severe" conduct necessary to satisfy the Title VII standard. *See, e.g.*, *Littlejohn*, 795 F.3d at 321 (plaintiff failed to allege hostile work environment based on allegations that her supervisor made negative comments about her, wrongfully reprimanded her, replaced her at meetings, and increased her reporting schedule); *Varughese v. Mount Sinai Med. Ctr.*, No. 12-CV-8812, 2015 WL 1499618, at *60 (S.D.N.Y. Mar. 27, 2015) (events "alleged to have occurred four times over the course of [plaintiff's] employment" by definition not "pervasive"), *aff'd*, 693 F. App'x 41 (2d Cir. 2017).

The plaintiff's hostile work environment claims are dismissed.[9]

---

[9] The plaintiff's retaliation claim must also be dismissed. The plaintiff has not pled an "adverse employment action." *See e.g.*, *Delgado v. Triborough Bridge & Tunnel Auth.*, 485 F. Supp. 2d 453, 461 (S.D.N.Y. 2007).

13

## CONCLUSION

For these reasons, the defendants' motion to dismiss is granted. Further amendments would not cure the deficiencies described above. Accordingly, the amended complaint is dismissed with prejudice.

Although the plaintiff paid the filing fee to initiate this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

                                                    s/Ann M. Donnelly
                                                  ANN M. DONNELLY
                                                  United States District Judge

Dated: Brooklyn, New York
        March 7, 2024